## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTOPHER C. DAVIDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| DEUTSCHE BANK SECURITIES, INC., | ) | Civil Action No. 1:04-cv-11027-RGS |
| DEUTSCHE BANK AMERICAS | ) | |
| HOLDING CORPORATION, | ) | |
| and DEUTSCHE BANK AMERICAS | ) | |
| SEVERANCE PAY PLAN | ) | |
| | ) | |
| Defendants. | ) | |

### FIRST AMENDED AND RESTATED COMPLAINT

By this action, the Plaintiff, Christopher C. Davidson ("Davidson"), seeks equitable relief and damages against Deutsche Bank Securities, Inc., Deutsche Bank Americas Holding Corporation, and Deutsche Bank Americas Severance Pay Plan (the " Defendants") for incentive compensation and benefits which the Defendants owe to Davidson.

### PARTIES

1.  The Plaintiff, Davidson, is and at all relevant times was a resident of Boston, Suffolk County, Massachusetts.

2.  On information and belief, the Deutsche Bank Securities, Inc. ("DBSI" or "Deutsche Bank") (f/k/a Deutsche Bank Alex Brown) is a Delaware corporation with a principal place of business at 60 Wall Street, New York, New

York 10005.  DBSI maintains an office at 225 Franklin Street, Boston, Massachusetts 02110.

3.  On information and belief, the Deutsche Bank Americas Holding Corporation ("DB Holdings") is a Delaware corporation with a principal place of business at 31 West 52nd Street, New York, New York 10019.  On information and belief, DB Holdings is an affiliate of DBSI and the plan sponsor, plan administrator, and, on information and belief, a fiduciary of the Deutsche Bank Americas Severance Plan (the "Severance Plan").

<u>STATEMENT OF FACTS</u>

4.  Davidson was hired by Deutsche Bank on February 25, 2001, pursuant to a certain written contract attached hereto as <u>Exhibit A</u> (the "Employment Letter").  Davidson was a Vice President of institutional equity sales where his duties can be described as that of a salesman selling proprietary research and large blocks of stock to the various mutual fund and insurance companies located in and around Boston.

5.  The Employment Letter established the basic terms of Davidson's employment including the payment of a base salary and certain incentive compensation.

Specifically, the Employment Letter stated:

> You will be eligible to participate in the Deutsche Bank incentive pool in an amount contingent upon the profitability of Deutsche Bank's Operations, the performance of your division, and your individual contribution.

6. Pursuant to the agreement established under the Employment Letter, Deutsche Bank paid Davidson the promised base salary and incentive compensation in each of 2001, 2002 and 2003 in amounts greater than his entire yearly salary.

7. Davidson's employment was terminated by Deutsche Bank on March 16, 2004. The termination was not for cause (as defined under any relevant document).

8. Prior to his termination, Davidson had diligently and faithfully performed his duties in a manner equal to or better than he had during his prior years of employment.

9. Pursuant to Deutsche Bank filing dated April 30, 2004 on Form 6-K with the Securities and Exchange Commission, the profitability and Deutsche Bank and Davidson's division during this time period can be ascertained. In that report, Deutsche Bank reported quarterly net income of approximately $1.159 billion as compared to a loss of $270 million during the same period in 2003. In addition, such report went on to identify Davidson's division (sales and trading) as performing particularly well. Id., and separately sets out this division's financial performance in page 15 of the notes to the financial statements which show its sales during the period of $636 million as compared with $622 million during the same period in 2003.

10. Accordingly, all three criteria (performance of Deutsche Bank and Davidson's division) called for in the Employment Letter for the payment of

incentive compensation have been established and Davidson is entitled to incentive compensation under the Employment Letter.

11. Certain Deutsche Bank employees are covered by the Severance Plan. Under Section 2 of the Severance Plan, a terminated Deutsche Bank employee is entitled to benefits under if: (i) the employee remains in good standing through the date of termination; (ii) the employee settles his expenses, employer loans and returns employer property; and (iii) the employee executes a Release Agreement in the form and within the time frame required by the employer.

12. Davidson remained in good standing in his position with Deutsche Bank through the termination date and has submitted the necessary paperwork concerning his expenses.  A form of Release Agreement was presented to Davidson on the date of his termination for execution by April 2, 2004 (as extended), however, because such agreement failed to provide for the full payment of amounts owed him, Davidson did not execute the Separation Agreement.  Davidson stands ready to execute any such agreement that provides such protections as to these and certain other matters.

13. Under the Severance Plan, upon termination, an eligible employee is entitled to three weeks salary for each year worked with a minimum of 12 weeks. The current amount owing is approximately $28,900, plus interest, attorney's fees and costs.

14. A demand by Davidson on the Defendants for his 2004 incentive compensation and severance benefits has been denied.

## Count 1
(Breach of Contract)

15.  Davidson repeats and incorporates by reference the allegations set

forth in paragraphs 1-14.

16. Under the terms of the agreement established between Davidson and

Deutsche Bank under the Employment Letter, Deutsche Bank is obligated to pay

Davidson incentive compensation upon the fulfillment of certain conditions.

Specifically, the Employment Letter stated:

> You will be eligible to participate in the Deutsche Bank incentive
> pool in an amount contingent upon the profitability of Deutsche
> Bank's Operations, the performance of your division, and your
> individual contribution.

17. Each of the relevant conditions under the Employment Letter has been

fulfilled and, accordingly, Deutsche Bank's failure to pay Davidson his incentive

compensation constitutes a breach of the agreement.

18. Davidson has suffered damages as a direct and proximate result of

Deutsche Bank's breach of contract.

## Count 2
(Quantum Meruit)

19.    Davidson repeats and incorporates by reference the allegations set

forth in paragraphs 1-18.

20.    During the first quarter of 2004, Davidson conferred a measurable

benefit on Deutsche Bank by providing valuable services with the reasonable

expectation of being compensated.  This expectation was due to Davidson's

employment letter, the past practice of Deutsche Bank as well as the standard practice of the industry.

21.    Deutsche Bank accepted those services and expected, or reasonably should have expected, to pay for them.

22.    Deutsche Bank has failed and refused to fully pay for those services and has failed to provide Davidson for his incentive compensation for the first quarter.

23.    Deutsche Bank has been unjustly enriched to the unjust detriment of Davidson.

24.    Davidson is entitled to his incentive compensation in *quantum meruit* damages for the fair value of the services rendered.

<u>Count 3</u>
(Breach of Implied-in-Fact Contract)

25.    Davidson repeats and incorporates by reference the allegations set forth in paragraphs 1-24.

26.    Pursuant to the Employment Letter and in the course of performing thereunder, during the first quarter of 2004, Davidson sold large blocks of stock to various mutual funds and insurance companies located in around Boston. He did this with the expectation of being paid.

27.    Deutsche Bank had reason to believe that Davidson was acting with the expectation of being paid and Deutsche Bank permitted Davidson to act without objection.

28.    Despite repeated demands for payment, Deutsche Bank failed to pay Davidson his incentive compensation for the first quarter of 2004.

29.    Further, despite the fact that Davidson remained an employee in good standing and submitted the necessary paperwork concerning expenses, Deutsche Bank failed to provide benefits entitled to him under the Severance Plan, including, but not limited to three weeks salary (approximately $28,900) plus interest, attorney's fees and costs.

30.    As a result of Deutsche Bank's breach and its failure and refusal to pay for services rendered, Davidson has sustained damages, plus interest, costs, and attorney's fees.

<div align="center">

Count 4
(Breach of Implied Covenant of
Good Faith and Fair Dealing)
</div>

31.    Davidson repeats and incorporates by reference the allegations set forth in paragraphs 1-30.

32.    Every contract entered into in Massachusetts contains an implied covenant of good faith and fair dealing.

33.    The Defendants' actions, including, without limitation, failing to pay Davidson his incentive compensation set forth in the employment letter for serviced performed in the first quarter of 2004, constitute a breach of that implied covenant.

34.    Further, despite the fact that Davidson remained an employee in good standing and submitted the necessary paperwork concerning expenses,

<div align="center">7</div>

Deutsche Bank failed to provide benefits entitled to him under the Severance Plan, including, but not limited to three weeks salary (approximately $28,900) plus interest, attorney's fees and costs.

35.    As a result of the Defendants' breach of the implied covenant of good faith and fair dealing, Davidson has suffered great financial harm.

<u>Count 5</u>
(Entitlement to Reasonably Anticipated Future Compensation
In Circumstances Involving Discharge Without Cause)

36.    All of the allegations set forth in paragraphs 1 through 35 are hereby incorporated by reference.

37.    The obligation of good faith and fair dealing imposed on an employer requires, among other things, that the employer be liable for the employee's loss of compensation related to an employee's past service, when the employee is discharged without good cause and the amount of such compensation is "reasonably ascertainable."

38.    As established above, Davidson's employment was terminated without "Cause", Defendants' have refused to pay Davidson incentive compensation for his period of employment in 2004 (i.e. past services).

39.    Through the failure to pay Davidson said incentive compensation, Davidson has been damaged.

<u>PRAYERS FOR RELIEF</u>

WHEREFORE, Plaintiff requests the following relief:



1. That this Court enter judgment against Deutsche Bank in the amount equal to all damages suffered by the Plaintiff as a result of the Defendants' breach of the agreement between the parties concerning Davidson's employment.

2. In the alternative to the relief prayed for in paragraph 1 (immediately above), that this Court enter judgment against Deutsche Bank in the amount equal to all incentive compensation lost by the Plaintiff to which the Plaintiff had a reasonable expectation of receiving as determined by this Court.

3. That this Court enter judgment against Deutsche Bank, DB Holdings and the Severance Plan for all damages suffered by the Plaintiff in conjunction with his severance pay.

4. That this Court grant the Plaintiff such other and further relief as it deems to be just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

CHRISTOPHER C. DAVIDSON
By his attorneys,
CRAIG AND MACAULEY
PROFESSIONAL CORPORATION

Dated: January 5, 2005

Martin P. Desmery (BBO# 550133)
Peter I. Dunn (BBO# 641307)
Allison M. O'Neil (BBO# 641330)
Craig and Macauley
Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 367-9500

**Deutsche Banc Alex. Brown**

**Deutsche Bank** 

Deutsche Banc Alex. Brown Inc.
31 West 52nd Street
New York, NY 10019
Tel 212 469 5000

<u>**Personal & Confidential**</u>

February 7, 2001

Chris Davidson

Dear Chris:

We are pleased to confirm our offer to join Deutsche Banc Alex. Brown Inc. ("DBAB") in Boston. The details of our offer are summarized below:

Your Division will be **Equities.**

Your Title, for the purposes of external marketing, will be **Vice President.**

Your Position will be **European Equity Salesperson.**

<u>**Compensation**</u>
Your base salary will be **$5,208.34** (less statutory withholdings) payable on a semi-monthly basis and equivalent to **$125,000.00** (less statutory withholdings) on an annualized basis. Your salary will be paid on the 14th and 28th of each month and will be reviewed annually.

<u>**Incentive Compensation**</u>
You will be eligible to participate in the Deutsche Bank Incentive pool in an amount contingent upon the profitability of Deutsche Bank's operations, the performance of your division, and your individual contribution.

You will receive a minimum guaranteed incentive bonus award of not less than **$875,000.00** (less statutory withholdings) for the year ending December 31, 2001 (the "Guaranteed Incentive Bonus") The form of your total incentive bonus may be part-cash, part-equity, and any split will be based on the policy agreed within your employing division at the time the incentive bonus is delivered. However for the year ending December 31, 2001, the cash portion of the Guaranteed Incentive Bonus will not be less than 70% of the total award.

The cash portion of the Guaranteed Incentive Bonus is payable no later than the end of March 2002 provided that no notice of termination has been given by you prior to the date of payment, and provided that your employment has not terminated for "Cause" (as defined in Appendix A).

<u>**Deferred Compensation Plan**</u>
Should you wish to participate in the Deutsche Bank Deferred Compensation Plan by electing to defer any or all of your 2001 bonus, an election form must be completed and returned to Human Resources within 30 days after commencement of your employment. Consistent with the plan,

**Deutsche Banc Alex. Brown**    **Deutsche Bank** ▮

you will be provided with the opportunity in subsequent years to make a bonus deferral election for each calendar year.

## Vacation
In accordance with the Deutsche Bank vacation policy, you will be entitled to 25 vacation days (plus 3 Personal holidays) each year.  This entitlement will be prorated during 2001.

## Benefits
You are eligible to enroll in the Bank's Benefits Program as of your first day of employment. To enroll, you must call the Deutsche Bank Benefits Center at (888) 213-5500 or 1-847-883-0616 (if calling from outside the United States) **within 45 days of your start date**. A Benefits Representative can provide you with details about each plan and can guide you to online resources.

After six months of employment, you will be eligible to participate in the Deutsche Bank Americas Matched Savings Plan - 401(k) and after one year, an account will be established on your behalf in the Deutsche Bank Americas Cash Account Pension Plan.

## Additional Terms
You acknowledge that, to your knowledge, there are no contractual impediments which restrict your acceptance of this employment offer or your proposed employment and that, to your knowledge, you will not bring to your employment or use in connection with such employment any trade secrets or confidential or proprietary information that you used or had access to by reason of any previous employment that is the property of any previous employer.  If you are unsure of whether you have any restrictions, please call your Human Resources Department contact.

## Disclosure of Inventions
When you join Deutsche Bank, you will fully disclose and will continue to disclose to DBAB all Inventions (meaning discoveries, concepts and ideas, whether or not patentable, including, but not limited to, processes, methods, formulas, and techniques as well as improvements or know-how related to them) concerning the financial services industry that you believe you own or possess, and concerning any present or prospective activities that are published before the Invention, made or conceived by you, in whole or in part, at this time  (the "Excluded Inventions").

## Ownership of Inventions
After your start date, you must promptly disclose any Inventions that you create.  Any and all Inventions, except the Excluded Inventions, shall be the absolute property of DBAB or its designees and, at the request of DBAB and at its expense, but without additional compensation, you will make application for United States letters patent and foreign letters patent on such Inventions and will assign to DBAB all your right, title, and interest in such Inventions, and will execute any and all reasonable instruments and do any and all acts reasonably necessary or desirable in connection with any such application for letters patent or in order to establish and  perfect in DBAB the entire right, title, and interest in such Inventions, patent applications, or patents, and also execute any instrument reasonably necessary or desirable in connection with any continuations, renewals or reissues thereof in the conduct of any related proceedings or litigation.

#59390 v1

FEB 07 2001 15:24 FR DEUTSCHE BANK        212 474 7829 TO 916173109000        P.04/06

**Deutsche Bank** [logo]

**Deutsche Banc Alex. Brown**

**Conditions**
Our offer is contingent upon your completing the enclosed employment package. The package includes an employment application, a security data sheet, the Code of Professional Conduct and confirmation of employment authorization (which will include completing the Immigration and Naturalization Service's Form I-9).

In addition, it will be necessary for you to successfully complete a confidential drug and fingerprint screening, and a background investigation, including, but not limited to, your employment, education and credit history. Please call Sara Zweig at 212-469-3300 to schedule the above pre-employment screening upon acceptance of our offer. *This offer will expire if not accepted within five business days of the date of this letter.*

If your employment with DBAB requires that you be registered pursuant to the requirements of the various regulatory bodies overseeing the securities industry (e.g., NYSE, NASD, and Commodities Exchange) then such registration must be obtained within the time frame agreed upon by you and the Compliance Department.

This offer is not intended to be, and should not be construed as creating a contract guaranteeing employment for any specific duration subject to the terms and conditions set forth herein. It is understood that DBAB is offering you an employment "at will" relationship; i.e., either you or DBAB may separate your employment at any time for any reason and we have made no other representations, promises, or commitments concerning our offer or your proposed employment.

All general personnel policies existing for staff members of DBAB will apply to you (except as may otherwise be stated herein) and you are expected to apply strictest confidentiality to all business matters and to comply with the *Code of Professional Conduct and the Trading Guidelines, and the policies and procedures manual for Equities in the North American region.*

All of the individuals with whom you met are enthusiastic at the prospect of your joining Deutsche Bank. If you have any questions regarding this offer, please call **Kristi Dugan at 212-469-8388.**

Sincerely,
**Deutsche Banc Alex. Brown Inc.**


Peter Goldstein
As-Attorney-In-Fact

Kristi Dugan
As-Attorney-In-Fact

Employment Offer Accepted:

Chris Davidson          Date          2/8/01

Employment Date: _____

#69390 v1

FEB 07 2001 15:24 FR DEUTSCHE BANK        212 474 7029 TO 916173109000        P.05/06

**Deutsche Banc Alex. Brown**                **Deutsche Bank** 

APPENDIX A

"Cause" shall mean (i) any act, or a series of acts or omissions, that constitute a material breach by you of the terms of this letter, the Deutsche Bank *Code of Professional Conduct*, the Deutsche Bank *Trading Guidelines* or any of the Deutsche Bank Group's published personnel policies applicable to you, (ii) your intentional and willful violation of specific, lawful written directions from the Deutsche Bank Group, or (iii) the intentional, willful failure to perform a substantial part of your duties. You will receive written notice of an event that we consider to be Cause and an opportunity to cure it, if it is curable.

#69390 v1

212 474 7029 TO 916173109000    P. 05/08

FEB 07 2001 15:25 FR DEUTSCHE BANK

Deutsche Bank 

# DB Share Scheme

## Award Summary

### General
DB Share awards are granted to select individuals to further align their interests with those of the shareholders. Participation is based on both historic performance and anticipated ongoing contribution to the success of the organization.

### Award Vehicle
Awards will be made in the form of notional Deutsche Bank shares and your award will perform in direct relation to the Deutsche Bank share price. There are no voting rights or dividends associated with these awards.

### Grant Date
The effective date of your awards will be 15 February 2001.

### Valuation
The initial award valuation will be based on the average price of DB Shares on the XETRA exchange for the last 10 trading days of January. Details about your award including a scheme brochure and plan rules will be distributed with your award agreement beginning in March.

### Restrictions
During the restriction period you may not sell, encumber, hedge or otherwise mitigate the share price risk of your DB Share awards.

### Vesting
The vesting of DB Share Scheme awards will occur over 30 months. One third of the initial award will vest in August 2001, with additional shares vesting in August 2002, and August 2003.

### Award Settlement
Participants may be required to establish a custody account for the delivery of DB Shares. Failure to establish a custody account if required, may result in the forfeiture of your award. DB Shares will be delivered net of any required withholding as soon as possible following the vesting event.

In order to meet any withholding requirements, a sufficient number of shares will be sold and the associated funds will be delivered to the appropriate payroll location.

Deutsche Bank reserves the rights to sell all vested shares and deliver the appropriate payment via standard payroll distribution vehicles.

### Taxation
Country specific tax implications will be provided within the Plan brochure. In general, the taxable event occurs upon vesting.

### Foreign Exchange Risk
Participants will be given the opportunity to hedge the foreign exchange exposure to a number of major currencies. Communication regarding the details of this offering will be distributed with your DB Share Scheme award agreement.

### Forfeiture and Vesting
If you leave Deutsche Bank prior to the vesting event, any unvested awards may be subject to forfeiture depending upon your leaver status. Events that will result in the automatic forfeiture of your shares include

- Voluntarily terminating employment with Deutsche Bank to join a competitor;
- Termination of employment for Cause (as determined by DB) or responsibility for any act or omission that breaches the terms of any settlement or separation agreement;
- Recruiting or encouraging any Deutsche Bank Group employee to join another employer;
- Soliciting DB clients with the effect or intention of diverting business from DB;
- Failure to establish a custody account if required;
- Acting in a manner that is wrongfully prejudicial to DB's business interests or reputation; or
- Disclosure of DB client proprietary information.

If you terminate your employment with Deutsche Bank voluntarily and do not perform any acts that lead to an automatic forfeiture of your award, the final status of your award will be subject to review and approval of the Executive Management Committee.

Generally, in cases of mutually agreed separation, redundancy or retirement, you would not ordinarily forfeit entitlement to your award. However the restriction period will continue to apply.

Special provisions apply in the case of termination due to death or permanent disability.

### Change of Control
In the event of a Change of Control of DB AG, the Board of Managing Directors may, at its sole discretion, decide to either accelerate some or all of the interests attributable to a DB Share Award or to replace with an award of equivalent value.

If, as a result of a Change in Control, DB materially reduces an employee's responsibilities and an employee voluntarily terminates their employment with DB, Shares will vest (unless DB offers the employee substantially similar responsibility in another position). However, the restricted period will continue.

### Changes in Capitalization
If any change shall occur in or affect shares of common stock on account of a merger, reorganization, special dividend, stock split or similar changes, the plan administrator shall make appropriate adjustments in any terms or provisions in order to preserve the full benefits for participants.

### Amendment and Termination
DB may not modify, amend, or terminate the Plan at any time if such amendment, modification or termination shall adversely affect the rights of the Participant, without the participant's prior written consent.

While care has been exercised to ensure accuracy of the information provided above, it does not surpass or replace the rules of the DB Share Scheme. In any dispute, the Scheme rules will prevail.

** TOTAL PAGE.05 **