UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER C. DAVIDSON,<br>      Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK SECURITIES, INC.,<br>DEUTSCHE BANK AMERICAS<br>HOLDING CORPORATION, and<br>DEUTSCHE BANK AMERICAS<br>SEVERANCE PAY PLAN,<br>      Defendants. | Civil Action No. 1:04-cv-11027-RGS |

**MOTION AND SUPPORTING MEMORANDUM
TO DISMISS FIRST AMENDED AND RESTATED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Deutsche Bank Securities, Inc. ("Deutsche Bank"), Deutsche Bank Americas Holding Corporation, and Deutsche Bank Americas Severance Pay Plan (sometimes "defendants") move to dismiss plaintiff's First Amended and Restated Complaint ("Amended Complaint," or "Am. Cp.").

**INTRODUCTION**

Plaintiff's original Verified Complaint ("Orig. Cp.") sought to recover two different types of employee benefits, namely: (1) some unspecified portion of the future incentive compensation plaintiff claimed he might have been granted for 2004 had he remained employed with Deutsche Bank throughout that year; and (2) a "Special Severance Payment" under Deutsche Bank's Severance Plan of "up to" 50% of the amount of the incentive compensation award he had received for 2003. Plaintiff sought to recover the first element under the Massachusetts Wage Act (M.G.L. c. 149, §149),

and on contract and "*Gram*" theories.[1]  He sued for the "Special Severance Payment" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*.  He also asked the Court to enter a declaratory judgment as to his rights to continue vesting restricted equity units in Deutsche Bank.

On defendants' motion, the Court dismissed all the claims in the original complaint on December 15, 2004.  Three of the five counts were dismissed with prejudice (Wage Act, ERISA, and declaratory judgment claims).  The remaining two counts, which sought future incentive compensation on contract and *Gram* theories, were dismissed without prejudice, with leave to amend "to add allegations of <u>custom and usage</u> at Deutsche and in the industry and facts relating to the theory of <u>ascertainable</u> future wage arising from past services under [*Gram*] to support a viable quasi-contract claim."  Order of 12/15/04 (emphasis added).

Even after a trip back to the drawing board, Plaintiff's Amended Complaint still fails to state a claim on which relief may be granted.  Most critically, plaintiff has failed to allege any facts of the sort the Court gave him leave to replead.  He has failed to allege facts relating to custom and usage at Deutsche Bank or in the industry; he has failed to allege facts suggesting that any portion of the future incentive award was ascertainable or intended as a wage for particular past services; and, indeed, he has failed to allege any facts that could justify his recovery of future incentive compensation, whether on the theories he originally asserted or the new ones with which he now tries to shore up his defective claims.  Because the plaintiff has not corrected, and indeed cannot correct, the

---

[1]  *Gram v. Liberty Mutual Ins. Co.,* 384 Mass. 659, 672, 429 N.E.2d 21, 29 (1981), and *Gram v. Liberty Mutual Ins. Co.,* 391 Mass. 333, 334-36, 461 N.E.2d 796, 797-98 (1984).

2

deficiencies that plagued his prior Complaint, the Plaintiff's Amended Complaint should be dismissed.

Plaintiff's Amended Complaint also goes beyond the scope of the permitted amendment, in that it now purports to seek an entirely <u>new</u> element of recovery, namely, a severance payment equivalent to 12 weeks of his base salary, which he claims he is owed under the Severance Plan. This new claim should be dismissed because the claim is preempted by ERISA, and because plaintiff's own allegations establish that he has failed to meet the condition precedent for the payment of severance, namely the timely execution of a release.

## **DISCUSSION**

**I.    PLAINTIFF'S CLAIM FOR INCENTIVE COMPENSATION FAILS AS A MATTER OF LAW.**

    **A.    Count One Should Be Dismissed Because Plaintiff Has Failed to Allege Facts That Could Support Recovery of Any Portion of a Future Incentive Compensation Award for 2004 on a Contract Theory.**

Plaintiff's Amended Complaint, like his original complaint, fails to allege any facts that could support his claim to future incentive compensation on a contract theory. Plaintiff alleges that his "contract" with Deutsche Bank is the Employment Letter he attaches to his Amended Complaint as Exhibit A, and he squarely bases his right to future incentive compensation on the following language in the Employment Letter:

> You will be eligible to participate in the Deutsche Bank incentive pool in an amount contingent upon the profitability of Deutsche Bank's Operations, the performance of your division, and your individual contribution.

3

Am. Cp. ¶5 and Exhibit A.² The plain terms of this provision show that Deutsche Bank reserved discretion as to both the fact and the amount of any payment. Plaintiff fails to allege any facts that could support a conclusion that this provision reflects any contractually binding obligation to pay him any incentive compensation at all for 2004, much less any particular amount of incentive compensation.

In his Amended Complaint, plaintiff tries to suggest that Deutsche Bank assumed an enforceable obligation to pay a bonus for 2004 by alleging that the "criteria" stated in the letter were met. Namely, he alleges that Deutsche Bank was "profitable," in that it reported "quarterly net income of approximately $1.159 billion as compared to a loss of $270 million during the same period in 2003," and he alleges that plaintiff's "sales and trading" division "perform[ed] particularly well," achieving sales of "$636 million as compared with $622 million during the same period in 2003." Am. Cp. ¶9.³ These new allegations cannot correct the fundamental problem with plaintiff's contract claim, which is that nothing in the Employment Letter promised that Deutsche Bank would pay plaintiff <u>any</u> particular amount, or even any amount at all, <u>even if all the "criteria" were met</u>.

Contrary to the assumption that evidently underlies plaintiff's new allegations, the Employment Letter does not state that the achievement of the three "criteria" in some black-or-white, yes-or-no fashion will trigger the payment of an award. Instead, it provides only that he will be "eligible" for an incentive payment, and that the amount of

---

² *See also* Am. Cp. ¶¶4 (the "Employment Letter established the basic terms of [plaintiff's] employment including the payment of a base salary and certain <u>incentive compensation</u>") (emphasis added).

³ In reality, the plaintiff's Amended Complaint does little more than repeat as "allegations" the very same arguments that were set forth in his opposition to the defendant's motion to dismiss and that were insufficient to defeat that motion.

4

any such payment will be "contingent" on three factors that by their very nature require Deutsche Bank to exercise discretion in assessing them. Indeed, the fact that the provision does not even define any of these factors, much less suggest how a payment might be affected by the degree of achievement of any of the factors, only underscores the fact that Deutsche Bank had complete discretion in assessing the fact and amount of any award, and belies any notion that Deutsche Bank intended to assume a contractually binding obligation to make such payments.

Although plaintiff also now alleges that Deutsche Bank paid Davidson incentive compensation for 2001, 2002 and 2003 "in amounts greater than his entire yearly salary," such facts do not suggest that the Employment Letter obligated Deutsche Bank to pay plaintiff any amount at all for 2004, much less a theoretical, pro-rated portion of the year's award when he was terminated well before the end of the year. Am. Cp., ¶6. Plaintiff's reliance on Deutsche Bank's payment of a bonus for 2001 is wholly misplaced in the first instance because Deutsche Bank explicitly <u>promised</u> plaintiff a "minimum guaranteed bonus" of $875,000 <u>for 2001</u>, unlike other years. Am. Cp., Exhibit A. What Deutsche Bank paid plaintiff in 2001 pursuant to the express guarantee of a payment for that year has no bearing at all on his entitlement to payments for years as to which it is quite plain the Employment Letter undertakes no obligation. Indeed, if anything, the fact that the Employment Letter "explicitly guaranteed" plaintiff a certain "minimum" bonus for 2001, but was wholly silent as to any other year, leaves no doubt that <u>no</u> promise or guarantee was intended for any other year.

Nor is there any merit in plaintiff's suggestion that the fact that Deutsche Bank exercised its discretion to pay plaintiff incentive bonuses for 2002 and 2003 suggests that

5

it was contractually obligated to pay him any part of an incentive compensation award for 2004. For 2002 and 2003, plaintiff worked for Deutsche Bank for the entire year and was still employed at the time bonuses were paid for the year. In 2004, in contrast, plaintiff worked only the first two and one-half months, and had been gone for months by the time bonuses were even contemplated for that year. The fact that Deutsche Bank exercised its discretion to pay plaintiff bonuses in years when he worked the whole year is entirely consistent with the fact that the Employment Letter gives Deutsche Bank discretion with respect to incentive awards after 2001, and thus cannot support any conclusion that Deutsche Bank assumed a contractual obligation with respect to such awards or somehow limited the discretion it reserved in the Employment Letter.

The Massachusetts Appeals Court recently rejected claims very similar to the plaintiff's here, holding that employees could not sue in contract for an incentive bonus that was discretionary with the employer. In *Smith v. Boston Edison Co.,* 62 Mass. App. Ct. 1105, 816 N.E.2d 181 (2004 WL 2310982 at *2-3) (unpublished opinion), *rev. denied*, 442 Mass. 1114, 818 N.E.2d 1068 (2004), the court held that an employer as a matter of law was not contractually bound by a Management Incentive Plan that provided for the awarding of annual bonuses on a business unit basis, where the employer did not state the amount of the bonus employees would be paid, and provided that bonus could range from 0% to 9% of employee's base pay. The court held that because the contract showed that the employer had "total control" over the decision to pay a bonus and its amount, the employer had "committed itself to nothing" and had no contractual obligation to pay a bonus. *Id.* at *3. The court also rejected the argument that the employer's practice of "generally paying across-the-board bonuses" for several years

6

had "transformed the program into one [it] was contractually obligated to continue," holding that "nothing in [the employer's] performance of the [incentive plan] constituted a change from what had been promised when the plan was announced," i.e., that bonuses would be discretionary. *Id.*

Similarly here, plaintiff's allegations provide no basis for any conclusion that the award described in the Employment Letter is anything other than contingent, indefinite, and, as in *Smith*, entirely within Deutsche Bank's discretion. Because Deutsche Bank as a matter of law had no enforceable contractual obligation to pay plaintiff any portion of a future incentive compensation award for 2004, Count One of the Amended Complaint should be dismissed.

### B. Count Five Should Be Dismissed Because Plaintiff Has Failed to Allege Facts That Could Support Recovery of Any Part of an Incentive Compensation Award for 2004 on a *Gram* Theory.

Plaintiff similarly fails to allege any facts that could remedy the fatal defects in his claim seeking to recover the 2004 incentive compensation under *Gram*. First, he does not allege that the future incentive award represented compensation for any particular past service, such as the closing of a transaction, but claims instead that the award was compensation "for his period of employment in 2004 (past services)." Am. Cp. ¶38 (emphasis added). Additionally, the Employment Letter explicitly makes any award of incentive compensation, as well as its amount, contingent on factors other than plaintiff's own performance (i.e., Deutsche Bank's overall profitability and the performance of the division in which plaintiff was employed). Because these factors establish that the incentive award was not intended to compensate plaintiff for any particular services that he had rendered, the claim falls outside the scope of *Gram* and should be rejected. *See,*

7

*e.g., Hunt v. Wyle Laboratories, Inc.*, 997 F. Supp. 84, 90-91 (D. Mass. 1997) (recovery under *Gram* requires showing that termination deprived employee of "<u>measurable</u> compensation based upon <u>past services</u>") (emphasis added); *see also Coll v. PB Diagnostic Systems, Inc.,* 50 F.3d 1115, 1122 (1st Cir. 1995) (plaintiff could not recover potential incentive compensation under *Gram* because he failed to show that it represented a "particular benefit" to which he was entitled for past services); *Dykes v. DePuy, Inc.,* 140 F.3d 31, 41 (1st Cir. 1998) (to recover under *Gram*, compensation must be "specifically related to a particular past service"), *quoting McCone v. New England Tel. & Tel. Co.,* 393 Mass. 231, 471 N.E.2d 47, 50 (1984); *Gram*, 461 N.E.2d at 798 (denying recovery for lost "career credits," which were bonus payments "based upon the length of Gram's service").

    Plaintiff also fails to allege any facts suggesting that the incentive award is assured and reasonably ascertainable rather than speculative. He alleges no facts, for example, suggesting that Deutsche Bank, or the industry in general, typically granted identifiable and predictable amounts of incentive compensation based on any particular level of overall firm profitability or division or individual performance. The fact that plaintiff received incentive compensation in unspecified amounts "greater than his entire yearly salary" for 2001 (the year when he had a contractual right to a guaranteed minimum bonus), and for 2002 and 2003, years when he worked the whole year, unlike 2004, falls short of suggesting that his likely award for 2004 could in fact be reasonably ascertained, particularly where the plain language of the Employment Letter indicates that the fact and amount of any award are discretionary with Deutsche Bank. Am. Cp. ¶6.

In short, plaintiff seeks to recover a potential incentive award which, if paid, would relate to plaintiff's service generally, over a period of time, rather than to any particular service, as well as an award that is contingent, discretionary, and unascertainable. Because Massachusetts law makes clear that the *Gram* doctrine does not extend to such claims, Count Five fails to state a claim under *Gram* and should therefore be dismissed.

**C.     Count Two for Quantum Meruit Fails as a Matter of Law.**

There is similarly no merit in plaintiff's attempt to salvage his claim to future incentive compensation under a new theory of quantum meruit. Plaintiff now alleges, for the first time, that he "conferred a measurable benefit on Deutsche Bank by providing valuable services with the reasonable expectation of being compensated," which expectation he alleges was "due to his employment letter, the past practice of Deutsche Bank as well as the standard practice of the industry," and that he should therefore be allowed to recover some unspecified portion of his "incentive compensation for the first quarter" under a quantum meruit theory. Am. Cp. ¶20.

This claim fails as a matter of law because, under Massachusetts law, a quantum meruit claim cannot stand when a contract covers the same subject matter for which the plaintiff sues. As the Supreme Judicial Court recently held, "'[r]ecovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute.'" *MCI WorldCom Communications, Inc. v. Department of Telecommunications and Energy*, 442 Mass. 103, 116, 810 N.E.2d 802, 812 (2004), *quoting Boswell v. Zephyr Lines, Inc.,* 414 Mass. 241, 250, 606 N.E.2d 1336, 1342 (1993). For this reason, the court in *MCI* held that the agency had appropriately refused to consider the quantum meruit theory asserted

9

by the claimant, a communications company, to recover the fair value of services it provided by carrying certain telephonic traffic on its network. 810 N.E.2d at 812. The SJC held that the claimant could not recover for carrying such traffic on a quantum meruit theory because "the plain language of the agreement provided for the treatment" of such traffic. *Id.* *See also Zarum v. Brass Mill Materials Corp.,* 334 Mass. 81, 86, 134 N.E.2d 141, 143 (1956) (rejecting tax refund claim based on unjust enrichment theory where contract covered plaintiff's right to such a refund; "[t]he law will not imply a contract where there is an existing express contract covering the same subject matter"); *Garnick v. Scudder, P.C. v. Dolinsky*, 45 Mass. App. Ct. 925, 926-27, 701 N.E.2d 357, 359 (1998) (although attorney may recover "a fair and reasonable fee for his services" in quantum meruit "[i]n the absence of an agreement between lawyer and client" providing for payment, attorney could not recover in quantum meruit where engagement letter set out charges to be paid for legal services); *Verderber v. Perry*, 181 F.3d 81 (1st Cir. 1999) (unpublished opinion) (1999 WL 525953 at *5) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment"). *See also Ferrand v. Credit Lyonnais*, No. 02 Civ. 5191 (VM) (S.D.N.Y. Sep. 30, 2003) (2003 WL 22251313 at *13-14), *aff'd*, 110 Fed. Appx. 160 (2d Cir. 2004) (rejecting employee's quantum meruit claim for incentive bonus where employer's bonus policy was discretionary and where employee had no contractual right to bonus in addition to salary).

Here, plaintiff explicitly and repeatedly claims that his right to incentive compensation was established <u>by the Employment Letter</u>.[4] The Employment Letter,

---

[4] *See* Am. Cp. ¶5 ("[t]he Employment Letter established the basic terms of Davidson's employment including the payment of … certain incentive compensation"); *id.*, ¶10 ("Davidson is entitled to incentive compensation under the Employment Letter"); *id*., ¶¶16, 17 ("[u]nder the terms of the … Employment Letter, Deutsche Bank is obligated to pay Davidson incentive compensation"); *id.*, ¶20 (employment letter

10

however, explicitly addresses the subject of incentive compensation, and on its face establishes that both the fact and the amount of such awards are <u>discretionary</u> with Deutsche Bank. Because plaintiff cannot assert a quantum meruit theory to alter the parties' rights with respect to a matter that is addressed and governed by their contract, and, indeed, because there is plainly no tenable basis for any claim to incentive compensation other than the Employment Letter, plaintiff as a matter of law cannot assert a quantum meruit theory to seek recovery of that incentive compensation.

> **D.    Counts Three and Four Should Be Dismissed Because Plaintiff Cannot Recover Future Incentive Compensation for 2004 Under Theories of "Implied-in-Fact Contract" or "Implied Covenant of Good Faith and Fair Dealing."**

Finally, there is no merit in plaintiff's attempt to recover future incentive compensation for 2004 on theories of "implied-in-fact contract" (Count Three) or "implied covenant of good faith and fair dealing" (asserted in Count Four as a theory separate from *Gram*). These claims fail for similar reasons as the quantum meruit claim. First, plaintiff offers no factual allegation that could suggest any "implied" agreement by Deutsche Bank to pay plaintiff incentive compensation other than as provided in the Employment Letter. Second, where a contract addresses the subject matter in question and sets out the parties' understanding on that issue, there can be no "implied" contract inconsistent with the expression of the parties' agreement on the subject. *See, e.g., Fertility Center of New England, Inc. v. Tufts Associated Health Maintenance Organization, Inc.,* No. 99-2597 (Mass. Super. Ct. Jul. 18, 2002) (2002 WL 1592775 at *8), *aff'd*, 61 Mass. App. Ct. 1104, 807 N.E.2d 862 (2002) ("the implied covenant of good faith and fair dealing may not override the express terms of a contract"; where

---

gave plaintiff "reasonable expectation" of receiving incentive compensation); *id.*, ¶33 (Deutsche Bank failed to pay plaintiff "his incentive compensation set forth in the employment letter").

11

contract expressly allowed either party to terminate agreement on 60 days notice, termination in compliance with contract as a matter of law could not violate covenant of good faith and fair dealing); *Dunkin' Donuts Incorporated v. Panagakos*, 5 F. Supp. 2d 57, 64 (D. Mass. 1998) (where contract allowed franchisor "in its sole discretion" to operate or franchise other doughnut shops, franchisor's opening of a competing doughnut shop did not violate implied covenant of good faith and fair dealing in franchisor's contract with plaintiff franchisee; contrary holding would impermissibly allow implied covenant to override express terms of contract that gave defendant such discretion); *Health Plans, Inc. v. New York Life Ins. Co.,* 898 F. Supp. 941, 947 (D. Mass. 1995) (where contract gave defendant insurer discretion to raise premium rates, plaintiff could not assert implied covenant of good faith and fair dealing to "ignore" the language in the contract and "impute a new obligation" into the contract).

In short, the Employment Letter expressly addresses plaintiff's right to incentive compensation and plainly makes such compensation discretionary with Deutsche Bank, and thus precludes the "implication" of any contract requiring Deutsche Bank to make such an award. Because plaintiff's theories of "implied" contract rights fail in the face of the express language in the Employment Letter that makes the incentive award discretionary with Deutsche Bank, and because there are no allegations suggesting bad faith by Deutsche Bank, Counts Three and Four should be dismissed.

## II.     **PLAINTIFF'S CLAIMS FOR SEVERANCE PAY FAIL AS A MATTER OF LAW.**

In Counts Three and Four, respectively, plaintiff also now claims, for the first time, that Deutsche Bank breached an "implied-in-fact" contract with the plaintiff and the implied covenant of good faith and fair dealing by failing to pay him 12 weeks salary as

severance pay, which he claims was required by the Severance Plan.  Am. Cp. ¶¶11-14, 29, 34.  This claim fails as a matter of law.

### A.    ERISA Preempts Plaintiff's Claim for Severance Pay.

The only element of severance pay that plaintiff sought in his original complaint was a "Special Payment" of "up to" 50% of his prior year's incentive compensation, which he claimed Deutsche Bank was required to pay him under the terms of the "Severance Plan" that plaintiff attached to his original complaint as Exhibit D.  Orig. Cp. ¶10.  In his original complaint, plaintiff alleged that the Severance Plan was "an employee benefit plan established under ERISA," and he sought to recover that "Special Payment" exclusively under ERISA.  Orig. Cp. ¶¶4, 10, 27-32.  The Severance Plan also expressly provides that it is subject to ERISA.  *See* Orig. Cp., Exhibit D.[5]

Now that this claim has been dismissed, plaintiff seeks to recover a different element of severance pay under that same Severance Plan.  However, he now asserts the right to the payment not under ERISA, but under two common-law theories instead.  Specifically, plaintiff claims that he is entitled under the Severance Plan to a severance payment equal to 12 weeks of his base salary, or $28,846.15 (*see* Am. Cp., Counts Three and Four, for "Breach of Implied-in-Fact Contract" and "Breach of Implied Covenant of Good Faith and Fair Dealing," respectively).

Plaintiff's common-law claims for severance pay should be dismissed because they are preempted by ERISA.  ERISA expressly supersedes "any and all State laws

---

[5]    The Court could rely on the Severance Plan in deciding defendants' motion to dismiss even if plaintiff had not attached it to his Verified Complaint because plaintiff expressly relies on it for, and it is integral to, his claim to severance pay.  *See, e.g., Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir. 2000) ("it is well-established that, in reviewing the complaint, [the court] 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint'"), *quoting Shaw v. Digital Equipment Corp.,* 82 F.3d 1194, 1220 (1st Cir. 1996).  Indeed, plaintiff attached the Severance Plan to his Verified Complaint, as Exhibit D.

13

insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). As the First Circuit held in *Boston Children's Heart Foundation, Inc. v. Nadal-Ginard*, 73 F.3d 429, 439 (1st Cir. 1996), ERISA preempts "any state law that 'has a connection with or reference to' an ERISA plan." This preemption provision "is to be read expansively," and "has the effect of preempting any state law that refers to, or has a connection with, covered benefit plans, 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *Id.* It is also widely established that "severance plans are employee welfare benefit plans" under ERISA. *Allen v. Adage, Inc.*, 967 F.2d 695, 698 (1st Cir. 1992). Courts have therefore repeatedly held that ERISA preempts claims under state law to recover severance payments provided by a severance plan. *See, e.g., Campbell v. BankBoston*, 206 F. Supp. 2d 70, 79 (D. Mass. 2002), *aff'd*, 327 F.3d 1 (1st Cir. 2003) (dismissing, as preempted by ERISA, claims to recover severance benefits under state law theories of breach of covenant of good faith and fair dealing, because the state claims "aim[ed] to provide recovery for a denial of benefits under a benefits plan"); *Kern v. Polaroid Corp.,* 89 F. Supp. 2d 132, 137-38 (D. Mass. 2000) (dismissing, as preempted by ERISA, state-law breach of contract claim seeking to recover severance benefits); *Macomber v. Digital Equipment Corp.,* 865 F. Supp. 65, 71 (D.N.H. 1994) (state-law claims for unpaid severance benefits under ERISA plan preempted); *Welles v. Brach & Brock Confections, Inc.,* 14 Fed. Appx. 668 (7th Cir. 2001) (2003 WL 823887) (ERISA preempted claim for severance pay promised in employment letter); *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320, 328-39 (2d Cir. 1985)*, aff'd*, 477 U.S. 901 (1986).

Because plaintiff expressly alleged that the Severance Plan is subject to ERISA; because the Severance Plan that he attached to his original complaint, and on which he expressly relies for his claims to severance payment, provides that it is subject to ERISA; because the case law establishes that severance plans are subject to ERISA; and because plaintiff's state-law claims for severance pay seek to enforce the <u>same</u> purported obligation <u>under the Severance Plan</u> to pay severance benefits, those claims are preempted by ERISA, as a matter of law. For this reason, plaintiff's claim to severance pay in Counts Three and Four should be dismissed.

### 2. **Plaintiff as a Matter of Law Has No Right to the Severance Pay He Seeks Because His Own Allegations Establish that He Failed to Comply with the Condition Precedent to Its Payment.**

Plaintiff's claims to severance pay should be dismissed for a further reason: his own allegations establish that Deutsche Bank has no "implied" obligation to pay plaintiff any amounts as severance because plaintiff failed to comply with what his allegations establish was one of the <u>express</u> conditions for receiving it, namely, the execution of a release. Plaintiff alleges that, "[u]nder Section 2 of the Severance Plan, a terminated Deutsche Bank employee is entitled to benefits under [sic] <u>if</u>," among other things, "<u>the employee executes a Release Agreement</u> in the form and within the time frame required by the <u>employer</u>." Am. Cp. ¶11 (emphasis added). The Severance Plan similarly provides that an employee "whose employment is involuntarily terminated is eligible for benefits under this Plan, <u>provided that</u> such employee … <u>signs a Release Agreement</u> in the form and within the time required by the Bank." Orig. Cp., Exhibit D, at Section 2(a)(iii) (emphasis added). This language plainly establishes that plaintiff's execution of a release is a condition precedent to any obligation by Deutsche Bank to provide him

15

with any severance benefits.  *See, e.g., Massachusetts Mun. Wholesale Elec. Co. v. Danvers*, 411 Mass. 39, 46, 577 N.E.2d 283, 288 (1991) (words "provided that" create a condition precedent); *Cheschi v. Boston Edison Co.,* 39 Mass. App. Ct. 133, 142, 654 N.E.2d 48, 54 (1995) (same).  Thus, the Severance Plan expressly conditions an employee's right to any severance benefits under that plan on the employee's execution of a release agreement in the form and within the time required by Deutsche Bank.

Plaintiff's allegations establish as a matter of law that he refused to sign a release agreement in the form and within the time required by Deutsche Bank, and that he therefore cannot establish entitlement to any severance payment.  The termination letter that plaintiff attached to his original Verified Complaint as Exhibit E, and which he alleged in that complaint to be "[a] form of Release Agreement" that "was presented" to him, stated that plaintiff would be paid a severance payment of $19,230.77, representing eight weeks salary, and that he would be paid another amount of $9,615.38, representing four weeks of salary, "if you agree to the commitments described in this Agreement." Orig. Cp., ¶11 and Exhibit E; *see also* Am. Cp. ¶12.  That letter stated, among other things, that plaintiff would release any claims against Deutsche Bank.  *Id.*  Plaintiff acknowledges, however, that he "did not execute the Separation Agreement" containing the release.  Am. Cp. ¶12.

Because plaintiff's allegations establish that his right to a severance payment was expressly conditioned on his execution of a release "in the form and within the time required by the Bank," and because his allegations also establish that he did not sign such a release, as a matter of law he has no right to the payment of any such severance

16

payment. The claim for severance pay in Counts Three and Four should therefore be dismissed for this reason as well.

## CONCLUSION

For the reasons discussed above, the Amended Complaint fails to state any claim on which relief may be granted, and should be dismissed in its entirety.

>DEUTSCHE BANK SECURITIES, INC.,
>DEUTSCHE BANK AMERICAS HOLDING
>CORPORATION, AND DEUTSCHE
>BANK AMERICAS SEVERANCE PAY
>PLAN,
>
>By their attorneys,
>
>/s/      Scott A. Roberts
>Scott A. Roberts, BBO##550732
>sroberts@swmlawyers.com
>A. Lauren Carpenter, BBO#551258
>lcarpenter@swmlawyers.com
>SULLIVAN WEINSTEIN & McQUAY, P.C.
>Two Park Plaza
>Boston, MA 02116

Dated: February 3, 2005            617-348-4300

## LOCAL RULE 7.1(a)(2) CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a)(2), I, Scott A. Roberts, counsel to the defendants, certify I have conferred with the plaintiff's counsel and have attempted to in good faith to resolve or narrow the issues presented by the Defendants' Motion to Dismiss the Amended Complaint.

>_/s/ Scott A. Roberts
>Scott A. Roberts (BBO#550732)