UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER C. DAVIDSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>DEUTSCHE BANK SECURITIES, INC., )<br>DEUTSCHE BANK AMERICAS )<br>HOLDING CORPORATION, )<br>and DEUTSCHE BANK AMERICAS )<br>SEVERANCE PAY PLAN )<br>)<br>Defendants. )<br>) | F I L E D<br>Clerk's Office<br>USDC, Mass.<br>Date 3-18-05<br>By _____<br>Deputy Clerk<br><br>Civil Action No. 1:04-cv-11027-RGS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED AND RESTATED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

NOW COMES the Plaintiff, Christopher C. Davidson ("Davidson"), pursuant to Fed. R. Civ. P. 12(b)(6), who hereby opposes Defendants' Motion to Dismiss Plaintiff's First Amended and Restated Complaint. At the outset, the Plaintiff respectfully requests that the Court view the Defendants' motion as it should properly be captioned, a Motion for Reconsideration. The Court has been briefed, heard oral argument and ruled on all of the legal arguments that form the basis of the Defendants' motion to dismiss (other than those related the severance pay claim).[1] The Plaintiff respectfully requests that this Court deny Defendants' motion in its entirety, for the reasons set forth below.

**STANDARD OF REVIEW**

---

[1] A copy of the transcript from the prior Motion to Dismiss hearing (December 15, 2004) has been ordered and with permission of the Court, the Plaintiff seeks to supplement his filing when he receives a copy of the transcript.

In reviewing defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff[s]." *El Dia, Inc. v. Rossello*, 165 F.3d 106, 108 (1st Cir. 1999). When considering a motion to dismiss, a court "….must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, [the court] must deny the motion to dismiss." *Vartanian v. Monsanto Company*, 14 F.3d 297, 700 (1st Cir. 1994); *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir. 1987). A court may dismiss a complaint "only when the allegations are such that 'the plaintiff[s] can prove no set of facts to support [their] claim for relief.'" *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 30 (1st Cir. 2000). With this standard in mind, Davidson turns to present the facts in the light most favorable to him.

## INTRODUCTION

Christopher Davidson, age 32, worked for Deutsche Bank for over three years as a salesman of European equities to large financial institutions located in the Boston area. Complaint, ¶ 5. The terms of Davidson's employment were established under a certain letter agreement dated February 7, 2001 a copy of which is attached hereto as <u>Exhibit A</u> (the "Employment Letter"). Each year Davidson received a base salary of $125,000 and incentive compensation in an amount equal to or above this base salary. *Id.* at ¶¶ 5-9. Davidson's employment was terminated by Deutsche Bank on March 16, 2004 without "cause." *Id.* at ¶7. Prior to his determination, Davidson had faithfully performed his duties in a manner equal or better than he had during his prior employment. *Id.* at ¶8. In addition, according the Deutsche Bank's filings with the Security and Exchange Commission, Deutsche Banks reported a quarterly net income of approximately $1.159 billion as compared to a loss of $270 million

during the same period of 2003. *Id.* at ¶9. During the first quarter of 2004, Davidson conferred a measurable benefit on Deutsche Bank by providing valuable services with the reasonable expectation of being compensated. *Id.* at ¶20. This expectation was due to Davidson's employment letter, the past practice Deutsche Bank as well as the standard practice of the industry. *Id.* at ¶20. Deutsche Bank accepted those services and expected, or reasonably should have expected, to pay for them. *Id.* at ¶21. Deutsche Bank has been unjustly enriched to the detriment of Davidson. *Id.* at ¶23.

Davidson's original Verified Complaint ("Orig. Cp.") sought to recover two different types of employee benefits, namely: (1) some unspecified portion of the future incentive compensation plaintiff claimed he might have been granted for 2004 had he remained employed with Deutsche Bank throughout that year; and (2) a "Special Severance Payment" under Deutsche Bank's Severance Plan of "up to" 50% of the amount incentive compensation award he had received for 2003. Davidson sought to recover the first employee benefit under the Massachusetts Wage Act (M.G.L. c. 149 § 149), and on contract and "*Gram*" theories.[2] He also sued for the "Special Severance Payment" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* In addition, he asked the Court to enter a declaratory judgment as to his rights to continue vesting restricted equity units in Deutsche Bank.

On Defendant's motion, the Court dismissed all the claims in the original Complaint on December 15, 2004. Three of the five counts were dismissed with prejudice (Wage Act, ERISA, and declaratory judgment claims). The remaining two counts were dismissed without prejudice, with leave to amend the allegations. The Plaintiff filed it First Amended and Restated Complaint ("Amended Complaint") on January 5, 2005. In his Amended Complaint, Davidson added

---

[2] *Gram v. Liberty Mutual Insurance Co.*, 384 Mass. 659, 672 (1981); and *Gram v. Liberty Mutual Insurance Co.*, 391 Mass. 333 (1984).

3

Counts for Breach of Implied-in-Fact Contract and Breach of Implied Covenant of Good Faith and Fair Dealing as well as a new Count for severance pay. The Defendants then moved to dismiss the First Amended and Restated Complaint.

Davidson's Amended Complaint does indeed state a claim on which relief may be granted, and therefore, this Court should deny Defendant's Motion to Dismiss.

## I. DAVIDSON'S CLAIM FOR INCENTIVE COMPENSATION IS LEGALLY SUFFICIENT.

### A. Davidson has a right to Incentive Compensation for the First Quarter of 2004 as a matter of contract.

Defendants maintain that Davidson is not entitled to the claimed incentive compensation as a matter of contract where the employment letter states:

> You will be eligible to participate in the Deutsche Bank incentive pool in an amount contingent upon the profitability of Deutsche Bank's operations, the performance of your division, and your individual contribution.

See, Exhibit A to First Amended and Restated Complaint. Nowhere does the employment contract reserve to Deutsche Bank the right not to pay Davidson incentive compensation if all of the above-quoted criteria are met. In addition, in each of the past two years, Deutsche Bank has reported a profit, see, "Deutsche Bank at a Glance" publication a copy of which is attached to Plaintiff's Opposition to Defendants' Motion to Dismiss All Counts and Memorandum In Support Thereof as Exhibit B (final page), and paid Davidson incentive compensation in an amount equal to or above this base salary. Am. Complaint, ¶ 6. The compensation structure established between Davidson and Deutsche Bank, as it is at other investment banks, is such that individuals in the field of sales and trading receive incentive bonuses based on past service. Davidson Affidavit, ¶ 2 (September 2, 2004). In fact, the lion's share of compensation for individuals in this field is in the form of an

4

incentive bonus. In light of the above quoted language, the practice of payment between the parties and its consistency with the prevailing practice in the industry, there is little doubt that Davidson had a reasonable expectation of payment of incentive compensation.

Despite the creation of Davidson's reasonable expectation of payment, Defendants argue that Count I must be dismissed because they maintain that nothing in the employment contract created a contractual obligation on the part of Deutsche Bank to pay any incentive compensation. In support of this position Defendants cite to the unpublished decision of *Smith v. Boston Edison Co.*, 62 Mass. App.Ct. 1105 (2004). Defendants' reliance on this case, however, is misplaced. *Smith* involved a class action complaint by 271 employees claiming a right to incentive compensation based primarily upon the terms of a new compensation policy set forth in brochure circulated to the employees coupled with the fact that the employer had paid bonuses under the policy in the past. Specifically, under the policy, the employer reserved to itself the right to fund the plan and to pay out between 0% and 9% of base pay. The *Smith* court found this reservation convincing because under the policy, the employer could decide not to fund the plan and to pay a bonus of 0%. In addition, the court found convincing the following facts:

- The employer reserved the right to change the terms of the policy unilaterally.

- No contractual documents were executed.

The facts of the case at bar stand in stark contrast to those in *Smith*. For instance, nowhere in the employment contract does Deutsche Bank reserve to itself the right not to pay the incentive compensation if the relevant triggers are tripped or reserve to itself the right to change the terms set forth in the contract unilaterally. In addition, unlike *Smith*, the signatures of both Davidson and Deutsche Bank representatives appear at the end of the employment contract.

5

Accordingly, rather than bolster the Defendants' position, *Smith* instead bolsters that of Davidson because of the complete absence of facts found critical to that pro-employer decision.

Defendants also wrongly argue that any discretion afforded to Deutsche Bank under the employment contract is fatal to Davidson's contract claim. The right to withhold approval of bonuses under a compensation arrangement or plan is governed by the terms of the applicable document, subject to an implied covenant of good faith and fair dealing. *Sheehan v. FDIC*, 1994 U.S. App. LEXIS 26852, *6 (1st Cir., 1994) (unpublished)(employees not entitled to bonus payment where express terms of plan reserved to employer the right not to pay bonus in times of economic hardship); *Cheney v. Automatic Sprinkler Corp.*, 377 Mass. 141, 150 (Mass., 1979)("Good faith, however, must guide the employer's exercise of its discretion."). In addition, in Massachusetts, it is bad faith to use discretion to recapture opportunities forgone on contracting as determined by the other party's reasonable expectations "…to refuse to pay the expected cost of performance." *Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451, 473 (1991).[3]

---

[3] *See, Restatement 2d of Contracts*, § 33, which states:

> Where the [parties] intend to conclude a contract for the sale of goods, ….and the price is not settled, the price is a reasonable price at the time of delivery if (a) nothing is said as to price, or (b) the price is left to be agreed by the parties and they fail to agree, or (c) the price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded. Uniform Commercial Code § 2-305(1). *Or one party may be given power to fix the price within limits set by agreement or custom or good faith. Similar principles apply to contracts for the rendition of service.*

(emphasis added). Applied to the case at bar, while the employment contract granted Deutsche Bank the power to fix the amount of the incentive compensation (contingent upon the three criteria), such an arrangement does not mean that when such criteria are satisfied, Deutsche Bank cannot pay Davidson anything. Rather, as the Restatement makes clear, the power to determine the incentive compensation must be exercised in good faith. *See also*, Uniform Commercial Code §§ 1-203, 2-103(1)(b)(discretionary power granted by a commercial contract must be exercised in good faith and in accordance with fair dealing) and Uniform Commercial Code § 2-305(2)(price to be fixed by a seller or buyer of goods, for example, means a price for him to fix in good faith).

Applied to the case at bar, it is clear that, in addition to its other duties, any discretion that Deutsche Bank may have with respect to the determination of the amount of incentive compensation must be exercised in good faith. In addition, as set forth above, the language of the employment contract, the practice between the parties and the prevailing industry practice created a reasonable expectation of payment of incentive compensation for Davidson for which it would be bad faith on the part of Deutsche Bank to exercise its discretion in such a way as to wrongfully refuse Davidson such payment.[4] Further, that Deutsche Bank paid Davidson incentive compensation in an amount at least equal to his annual salary would also establish his reasonable expectation of payment of at least one quarter of that amount. Accordingly, Davidson is entitled to the incentive compensation sought the amount of which must now be determined in good faith.

### B. Defendants' Motion to Dismiss Count Five Must Fail because Plaintiff's *Gram v. Liberty Mutual Claim is Viable.*

Under *Gram v. Liberty Mutual Insurance Company*, the Supreme Judicial Court held that the obligation of good faith and fair dealing imposed on an employer requires that the employer be liable for the loss of compensation related to an employee's past service, when the employee is discharged without good cause. *Gram v. Liberty Mutual Insurance Company*, 384 Mass. 659, 672 (1981). As Defendants' Motion basically regurgitates arguments that this Court has heard

---

[4] Other courts have held that employees are entitled to incentive compensation in analogous circumstances. *See generally Lincoln Electric Co. v. Commissioner*, 44 F.2d 491 (1971) (court held that defendant company was obligated to pay a year-end bonus because it represented compensation for labor performed in the production of the company's goods); *Thatcher v. Wastach Chemical Co.*, 29 Utah 2d 189 (1973) (court found that plaintiff employees provided valuable services to the defendant employer with the expectation that they would be compensated); *Powell v. Republic Creosoting Company*, 172 Wash. 155 (1933) (court held that annual adjustments given by employer were bonuses; such bonuses were paid in substantial amounts regularly over a period of years, and this were something more than a pure gratuity); *Simon v. Riblet Tramway Co.*, 8 Wash. App. 289 (1973) (court held that employer's payment to employee over a 10-year period ripened into an implied contract for compensation where the amount thereof was discretionary with the employer, not negotiated by the employee).

twice before from them, Davidson refers the court to the discussion of *Gram* contained in Plaintiff's Opposition to Defendants' Motion to Dismiss All Counts and Memorandum In Support Thereof, pp. 12-13. Davidson points out, however, that the Defendants' reliance upon *Hunt v. Wylie Laboratories*, 997 F. Supp. 84 (D. Mass. 1997) is misplaced. Important to the decision in *Hunt* was the fact that the plaintiff was terminated because of customer and coworker complaints about him. *Id.* at 92. Accordingly, the "discharged without good cause" prong of *Gram* did not apply. Unlike the plaintiff in *Hunt*, it is undisputed that Davidson was terminated without cause. Accordingly, *Hunt* is inapplicable and Davidson has a viable claim under *Gram* because he was terminated without good cause, seeks compensation for his past services (the first quarter), and the amount is reasonably ascertainable through the good faith determination under the criteria set forth in the contract (in any event, in an amount at least equal to one quarter of his salary).

### C. Davidson is Entitled Recover Future Incentive Compensation for 2004 Under Theories of Implied-in-Fact Contract or Implied Covenant of Good Faith and Fair Dealing.

Defendants next move to dismiss Counts III and IV alleging that the Employment Letter "plainly makes such compensation discretionary with Deutsche Bank, and thus precludes the 'implication' of any contract requiring Deutsche Bank to make such an award." "Every contract" in Massachusetts "implies good faith and fair dealing between the parties to it." *Anthony's Pier Four v. HBC Assoc.*, 411 Mass. 451, 583 N.E.2d 806, 820 (Mass. 1991); see Restatement (Second) of Contracts § 205 ("every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement"). Pursuant to the covenant, "'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to

receive the fruits of the contract.'" *Anthony's Pier Four*, 583 N.E.2d at 820 (quoting *Drucker v. Roland Wm. Jutras Assoc.*, 370 Mass. 383, 348 N.E.2d 763 (1976)).

Davidson asserts that he is entitled to receive incentive compensation for the period in which he worked in 2004 (nearly the entire first quarter) under the employment contract. The defendants, however, maintain that Davidson must be employed at year end to be eligible to receive incentive compensation. Contrary to the defendants' assertions, nowhere in the Employment Letter is the determination of Davidson's eligibility for incentive compensation tied to an annual period.[5]

Davidson alleges that the defendants failed to pay him his incentive compensation that, in light of the employment contract and past practice, they should rightly expect to pay. During the first quarter of 2004, Davidson sold large blocks of stock to various mutual fund and insurance companies around Boston. He did this with the expectation of being paid. The defendants sought to capitalize on Davidson's work yet failed to provide Davidson his incentive compensation for this work. Such conduct would amply justify a recovery on breach of an implied covenant of good faith and fair dealing claim. *Anthony's Pier Four*, 583 N.E.2d at 821 ("it is . . . bad faith to use discretion to recapture opportunities forgone on contracting as determined by the other party's reasonable expectations--to refuse to pay the expected cost of performance").

The Defendants argue that the Plaintiff failed to offer a factual allegation which would suggest an

---

[5] Even if such a condition can be found to be a condition of Davidson's right to incentive compensation, Davidson's failure to meet such condition should be excused under the doctrine of frustration of purpose. Under this doctrine, if after a contract is made, a party's principal purpose is frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, that party's remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary. See, *Chase Precast Corp. v. John J. Paoenessa Co., Inc.*, 409 Mass. 371 (1991). Here, if one accepts Deutsche Bank's argument that the "cause" provision related to 2001 only and, despite it appearing nowhere in the Employment Letter, that incentive compensation was conditioned upon Davidson's being employed at year end, the failure to meet such condition should be excused as such failure is due exclusively to Deutsche Bank's actions.

9

"implied" agreement by Deutsche Bank to pay Davidson incentive compensation other than as provided in the Employment Letter. The compensation structure at Deutsche Bank, as it is at other investment banks, is such that individuals in the field of sales and trading receive incentive bonuses based on past service. Davidson Aff., ¶ 2. In fact, the lion's share of compensation for individuals in this field is in the form of an incentive bonus.[6] The Defendant's argument that the incentive bonus was only for the calendar year of 2001 is disingenuous. Given the prevailing practice in the industry, there is little reason why Davidson would have continued his employment at Deutsche Bank had his right to an incentive bonus been effective for only 2001. In addition, such an assertion is contrary to the practice between in the parties given that Davidson received a substantial amount of incentive compensation during each year of his employment. *Id.* Further, the language of the Employment Letter clearly mandates that Davidson is "eligible to participate in the Deutsche Bank incentive pool in an amount contingent upon the profitability of Deutsche Bank's operations, the performance of your division and your contribution." Therefore, these circumstances created in Davidson a reasonable expectation of incentive compensation in an amount at least equal to his salary in prior years (or, in this case, one quarter of that amount). As such, Deutsche Bank has breached its employment contract with Davidson by failing to provide his incentive compensation.

At this stage of the case, the Court should not dismiss the plaintiff's claim for breach of implied covenant of good faith and fair dealing unless the language of the Employment Letter expressly authorizes the defendants to withhold incentive compensation. As addressed supra,

---

[6] For instance, in 2002 and 2003, Davidson received a base salary of $125,000 and incentive compensation in an amount equal to or above this base salary. Am. Complaint, ¶ 7. As such, the course of performance between the parties under the Employment Letter has been to pay substantial incentive compensation when the conditions set forth in the Employment Letter have been satisfied. *See, Martino v. First National Bank of Boston*, 361 Mass. 325, 332 (1972)(the parties action after they have made an agreement is often strong evidence of the meaning of particular terms in the agreement). Accordingly, this pattern of paying incentive compensation is strong evidence that the same is now owed to Davidson.

10

however, if the Court concludes that the Employment Letter may be construed to govern Davidson's conduct throughout his employment at Deutsche Bank. *Dunkin' Donuts Inc. v. Panagakos*, 5 F. Supp. 2d 57, 64 (D.Mass 1998) ("implied covenant of good faith cannot override the express terms of a contract"); *See also, Rooney v. Paul D. Osborne Desk Co.*, 38 Mass. App. Ct. 82, 87 (Mass. App. Ct., 1995)(Where court stated "[w]e are left, therefore, with the simple question whether the plaintiff, having rendered the services contemplated by the agreement, must now be deprived of the value of what he was promised in exchange, or whether the defendant corporation, having received the benefit of those services, shall be entitled to keep that benefit without delivering the fair value of what was promised but never delivered.", judgment for plaintiff on promissory estoppel theory upheld).  Here, the promise of eligibility for incentive compensation was intended to induce Davidson to enhance sales in the course of his duties, Davidson did, in fact, undertake such action and, through the failure to pay him for such exhorts, Davidson has been harmed and Deutsche Bank enriched.[7]  Accordingly, for all of the above-stated reasons, the defendants' motion to dismiss counts three and four of the Complaint should be denied.

## II.    DAVIDSON'S CLAIM FOR SEVERANCE PAY IS VIABLE.

### A.    Davidson's Claim for Severance Pay is not Preempted.

The Defendants' ERISA arguments must fail because the Severance Plan is *not* an ERISA plan and, therefore, not preempted by federal law.  Under ERISA, a "plan" is defined as "…an employee welfare benefit plan or an employee pension benefit plan or a plan which is both

---

[7] The Plaintiff questions the Defendants' position as, logically, they would maintain that a decision by Deutsche Bank to terminate a star salesman on December 30th of a banner year would relieve it of any obligation to pay him incentive compensation while enjoying the fruits of his labor - even in the wake of an extensive history of paying such incentive compensation.  The Plaintiff maintains that such as situation, as well as the current matter, are exactly what the doctrines of implied in fact contract, good faith and fair dealing, promissory estoppel and quantum meruit are crafted to prevent. See, First Amended and Restated Complaint, Count 2.

11

an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1003(3). The term "employee welfare benefit plan" means "...any plan, fund, or program... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, ....benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits." *Id.* at (1). The term "employee pension benefit plan" means "...any plan, fund, or program which...established... provided retirement income to employees...or...results in a deferral of income by employees for periods extending to the termination of covered employment or beyond..." *Id.* at (2). The Severance Plan clearly does not fall into the definition of employee pension benefit plan, the question remains, however, as to whether the Severance Plan is an "employee welfare benefit plan" under ERISA.

In *Fort Halifax Packing Co. v. Coyne*, the Supreme Court held that a Maine statute requiring the payment of one week's pay for each year worked to workers displaced in plant closings was not an "employee welfare benefit plan" under ERISA. *Fort Halifax Packing Co. v. Coyne,* 492 U.S. 1, 6 (1987). The Court pointed out that there is a difference between mere "employee benefits," which are *not* covered by ERISA, and an "employee benefit plan," which *is* covered by ERISA, stating that an employee benefit plan is one which offers "benefits whose provisions by nature require an ongoing administrative program." *Id.* at 11. The *Fort Halifax* court went on to find that "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation...to do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility." *Id.*

12

The First Circuit expanded on *Fort Halifax* by looking to "the nature and extent of [the] employer's benefit obligations" under the package. *Rodowicz v. Mass. Mut. Life Ins. Co.*, 192 F.3d 162, 170 (1st Cir. 1999). In *Rodowicz*, the plaintiff retirees alleged that their employer had failed to inform them that a more favorable retirement package was forthcoming at the time they retired, and because of this failure they lost benefits that they would have received had they delayed retirement. 192 F.3d at 165. The plaintiffs alleged violations of ERISA and misrepresentation under state law. *Id.* The *Rodowicz* court held that a one-time lump-sum severance bonus to all employees that did not require much administrative burden or expense, and did not require the employer to make a long term financial commitment, did not satisfy the *Fort Halifax* standard for ERISA plans. 192 F.3d at 171.

Turning to the Severance Plan, under Section 2 thereof, a terminated Deutsche Bank employee is entitled to benefits under such plan if: (i) the employee remains in good standing through the date of termination; (ii) the employee settles his expenses, employer loans and returns employer property; and (iii) the employee executes a Release Agreement in the form and within the time frame required by the employer. Sections 4 and 5 of the Severance Plan state that payments under such plan will be made in lump sum and that, subject to certain exceptions, all Deutsche Bank provided benefits will cease on termination. Accordingly, all the plan committee needs to do is determine whether the severed employee meets the standard of eligibility and write a lump-sum check. As such, the Severance Plan is not an ERISA "plan" under *Fort Halifax* and *Rodowicz* - notwithstanding the fact that the Severance Plan refers to itself as one. Accordingly, Davidson's claim for severance pay under that plan is governed by state law.

**B.    Davidson's Claim for Severance Pay is Viable under State Law.**

13

Under the Severance Plan, Deutsche Bank promised to pay Davidson three weeks salary for each year of service (Severance Plan, Appendix, § 1(a) attached to Orig. Cp. as <u>Exhibit D</u>); provided, that, he: (1) remain in good standing through the date of termination; (2) settle his expenses, employer loans and return employer property; and (3) execute a Release Agreement in the form and within the time frame required by the employer. Severance Plan, § 2(a). Of the three items, Defendants argue that Davidson has no legal right to payment under the plan because item (3) was not fulfilled, namely, Davidson refused to sign away his rights via the unreasonable release presented to him by Deutsche Bank. See, Severance Letter attached to Orig. Cp. as <u>Exhibit E</u>.

Defendants wrongfully rely on their own prior breach of the Severance Plan to justify their position that Davidson failed to meet the condition. Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused. Restatement 2d of Contracts, § 245; Calamari and Perillo, Contracts, 3d. Ed. (1987), § 11-28 (discussing, generally, wrongful prevention and wrongful substantial hindrance as an excuse of a condition). In addition, pursuant to the duty of good faith inherent in every contract "'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Anthony's Pier Four*, 583 N.E.2d at 820 (quoting *Drucker v. Roland Wm. Jutras Assoc.*, 370 Mass. 383, 348 N.E.2d 763 (1976)).

Applied to the matter of the Severance Plan, Davidson maintains that Deutsche Bank's presentation of a release requiring him to sign away many important rights constitutes a breach of its duty of good faith. As such, the occurrence of that condition that he execute a release is excused and Davidson is entitled to full payment under the Severance Plan.

The Defendant's argument must also fail as Deutsche Bank waived this condition precedent because by paying Davidson two thirds of the severance pay.[8] There is no duty to perform a conditional promise until the condition is fulfilled, however, in some instances such as the case at bar, the condition may be excused and if this occurs, the promise must be performed as if it were unconditional. *See* Restatement, Second, Contracts, § 84(1); *In re Fordham,* B.R. 632, 642 (Bkrtcy. Ct. Mass. 1991) (lender could waive conditions for disbursement of loan proceeds made for its benefit). Here, the Severance Plan required that Davidson execute a release in order to receive the severance payment. Deutsche Bank presented Davidson with the Severance Letter for his signature, which he did not sign for the reasons discussed above. Nevertheless, Deutsche Bank paid two thirds of the severance payment. Accordingly, Deutsche Bank waived the condition on which it relies. Having waived the condition, Deutsche Bank is obligated to complete its performance under the plan.

---

[8] Subsequent to the filing of the First Amended and Restated Complaint, Davidson reviewed his bank records reflecting a tax payment of eight weeks severance (subject to withholding) which he initially thought was for the repayment of past expenses. Discussions with counsel for the Defendants since that time has revealed that such payment was a severance payment equal to eight weeks salary. As Davidson's claim is for the full twelve weeks, this claim can now be viewed for the balance, four weeks.

## **CONCLUSION**

For the reasons discussed above, the Defendants' Motion to Dismiss should be denied.

                            CHRISTOPHER C. DAVIDSON

                            By his attorneys,

                            CRAIG AND MACAULEY
                              PROFESSIONAL CORPORATION

Dated: March 18, 2005                 /s/ Martin P. Desmery
                            Martin P. Desmery (BBO#550133)
                            Peter l. Dunn (BBO# 641307)
                            Allison M. O'Neil (BBO# 641330)
                            Craig and Macauley
                             Professional Corporation
                            Federal Reserve Plaza
                            600 Atlantic Avenue
                            Boston, Massachusetts 02210
                            (617) 367-9500