UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER C. DAVIDSON, <br>             Plaintiff, <br><br> vs. <br><br> DEUTSCHE BANK SECURITIES, INC., <br> DEUTSCHE BANK AMERICAS <br> HOLDING CORPORATION, and <br> DEUTSCHE BANK AMERICAS <br> SEVERANCE PAY PLAN, <br><br>             Defendants. | Civil Action No. 1:04-cv-11027-RGS |

**REPLY TO PLAINTIFF'S OPPOSITION TO MEMORANDUM TO DISMISS FIRST AMENDED AND RESTATED COMPLAINT.**

Defendants reply as follows to Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended and Restated Complaint ("Opposition" or "Opp'n"). Plaintiff has not remedied the defects that led to the dismissal of his original complaint, and has failed to establish a right to recover on any of his claims.

## DISCUSSION

**I.    PLAINTIFF'S CLAIMS FOR INCENTIVE COMPENSATION SHOULD BE DISMISSED.**

   **A.    Plaintiff Cannot Recover Any Portion of His Contingent, Future Incentive Compensation on a Contract Theory.**

Plaintiff offers nothing to suggest that the future incentive compensation for which he sues is anything other than unascertainable, indefinite, and speculative. To the contrary, plaintiff appears to acknowledge this fact, characterizing the award he seeks as "some <u>unspecified</u> portion of the <u>future</u> incentive compensation plaintiff <u>might</u> have been

granted for 2004 <u>had he remained employed</u> with Deutsche Bank throughout that year." Opp'n at 3 (emphasis added).

Plaintiff makes an ineffectual effort to give some definition to this obviously amorphous claim by asserting that he had a "reasonable expectation" of receiving some unstated amount of incentive compensation if "the relevant triggers [were] tripped" (namely, Deutsche Bank's "profitability," the "performance" of the division in which plaintiff was employed, and plaintiff's own "contribution"). Opp'n at 5. However, despite defendants' express challenge, plaintiff does not even try to suggest what levels of achievement of any of these factors might "trigger" the payment of an award, much less how any such levels might translate into any particular dollar amount. The fact that the Employment Letter is silent on these matters establishes not only that Deutsche Bank retained complete discretion to make decisions about whether to make an award and its amount, but also that the provision governing the payment of future incentive compensation is too indefinite and uncertain to be enforced on a contract theory.

There is no merit in plaintiff's attempt to shore up this claim by arguing that the Court may award him some unspecified amount of discretionary incentive compensation on a contract theory because Deutsche Bank is required to exercise its discretion in "good faith." Opp'n at 6-7. To the extent plaintiff is relying on a theory of "good faith and fair dealing," such a theory cannot support an express contract claim (and, as discussed at Section I(C) below, fails in any event). Nor does plaintiff cite any authority suggesting that this Court may, under the guise of enforcing "good faith" obligations under a contract, require Deutsche Bank to make an award that it clearly reserved discretion <u>not</u> to make. Plaintiff misplaces reliance on authorities that allow courts to set a "reasonable

2

price" where "nothing is said" in the contract as to the price of goods or where the contract gives one party "power to fix the price within limits set by agreement or custom or good faith." *See* Opp'n at 6 n.3.  Such authorities merely indicate that courts may fill in obvious gaps in contracts, such as where parties agreed to an exchange but omitted to indicate the price.  They do not come close to suggesting that courts may override a contract that gives a party discretion <u>not</u> to make a particular payment at all, as the Employment Letter does with respect to future incentive compensation.  *See Rogaris v. Albert*, 431 Mass. 833, 835, 730 N.E.2d 869, 871 (2000) ("[i]t is not the role of the court to alter the parties' agreement" or "'to suppose a meaning which the parties have not expressed'"), *quoting Shoe & Leather Nat'l Bank v. Dix*, 123 Mass. 148, 150 (1877).

Finally, plaintiff turns contract law on its head in arguing that he has a contractually binding right to such compensation because the Employment Letter does not explicitly "reserve" to Deutsche Bank "the right not to pay Davidson incentive compensation."  Opp'n at 4, 5.  Because the Employment Letter makes clear that Deutsche Bank has no obligation to make incentive awards in the first instance, the absence of such a "reservation" cannot reasonably be deemed to suggest the existence of any obligation.  In short, the Amended Complaint plainly fails to state a claim for breach of contract, and Count 1 should therefore be dismissed.

### B. Plaintiff Has Apparently Abandoned His Quantum Meruit Claim.

As Deutsche Bank established in its principal brief, a quantum meruit claim that seeks a particular element of recovery does not state a viable claim if the plaintiff's rights are addressed in an express contract, as the plaintiff's right to incentive compensation is here.  Plaintiff does not discuss the quantum meruit claim in his Opposition or offer any

3

ground that could support it. Because the claim is not viable, Count 2 should be dismissed.

### C. Plaintiff Has Offered No Basis to Recover Future Incentive Compensation Under Any Other Theory.

Plaintiff makes virtually no effort to support the *Gram* claim in Count 5 of his Amended Complaint. He seeks to excuse his apparent inability to do so by asserting that defendants' brief merely "regurgitates arguments" that were raised before. Opp'n at 7-8. Plaintiff ignores the fact that these admittedly well-chewed arguments rightly resulted in the dismissal of the *Gram* claim in the original Complaint, and similarly require its dismissal now. Namely, and at the risk of repeating these arguments *ad nauseum*, plaintiff has alleged no facts suggesting that the contingent, future incentive compensation was <u>certain rather than speculative</u>, <u>readily identifiable</u> and <u>ascertainable</u>, and intended as a wage to compensate him for <u>particular</u> past services.

Plaintiff also errs in seeking to recover incentive compensation based on rights that he claims are "implied" in the contract, namely, an "implied-in-fact" contract or an "implied covenant of good faith and fair dealing." Plaintiff offers no authority, and there is none, suggesting that a party may be held to have violated an "implied" contract or obligation of good faith by acting consistently with an <u>express</u> contractual term that governs the matter, as Deutsche Bank did here in exercising its discretion not to pay plaintiff any portion of an incentive award for 2004 when he was terminated early in the year. Plaintiff has not attempted to distinguish any of the cases cited in defendants' principal brief, which establish that "implied" obligations cannot override the express

4

terms of a contract.[1]  Because plaintiff cannot recover on any "implied" theory, Counts 3 and 4 fail to state a claim and should be dismissed.

## II. PLAINTIFF'S CLAIMS FOR SEVERANCE PAY SHOULD BE DISMISSED.

### A. Plaintiff Admits that He Was Already Paid Eight of the Twelve Weeks of Severance Pay for Which He Sues.

Plaintiff admits that, although his Amended Complaint alleges that Deutsche Bank failed to pay him <u>12 weeks</u> of severance pay, or $28,900, he "subsequent[ly]" determined from his own bank records that <u>he had actually been paid for eight of those weeks</u> (an amount of $19,230.77), and that his claim is now only for four weeks of pay. Am. Cp. ¶¶13, 29, 34; Opp'n at 15 n.8.  Therefore, by plaintiff's own admission, and without more, Counts 3 and 4 should be dismissed with respect to eight of the 12 weeks of pay (i.e., as to $19,230.77 of the $28,900 sought).[2]

### B. ERISA Preempts Plaintiff's Claim for Severance Pay.

Deutsche Bank's Severance Plan is an ERISA plan (as plaintiff expressly alleged) because it evidences an ongoing commitment to pay severance benefits that requires an

---

[1] To the contrary, plaintiff himself cites one of those cases, *Dunkin' Donuts Inc. v. Panagakos*, 5 F. Supp. 2d 57, 64 (D. Mass. 1998), precisely for the proposition that the "implied covenant of good faith cannot override the express terms of a contract." Opp'n at 11.  Strangely, plaintiff also relies on a case upholding judgment on a theory of <u>promissory estoppel</u>, one of the only theories that plaintiff has not yet asserted in this case. Opp'n at 11, *citing Rooney v. Paul D. Osborne Desk Co.,* 38 Mass. App. Ct. 82, 87, 645 N.E.2d 50, 53 (1995).

[2] On February 3, 2005, after receiving the First Amended Complaint, which for the first time asserted a claim to 12 weeks of allegedly unpaid severance benefits, defendants informed plaintiff's counsel that Mr. Davidson had actually been paid eight weeks of severance pay at the time of his termination, and they demanded that he withdraw his claim to the extent of such payments. *See* Exhibit A hereto (letter to plaintiff's counsel of February 3, 2005).  Contrary to the suggestion in the Opposition, defendants heard nothing from the plaintiff's counsel on that subject (or any other) until they received the Opposition (which was inexplicably filed more than one month late). Opp'n at 15 n.8.  Plaintiff's counsel's assertion that Mr. Davidson "initially thought [that the payment of $19,230.77] was for the repayment of past expenses" verges on the incredible in view of the obviously large amount of the payment, as well as the fact that Deutsche Bank's termination letter to the plaintiff – which plaintiff attached to his Complaint – expressly states that Deutsche Bank is paying plaintiff the sum of $19,230.77 as eight weeks worth of <u>severance</u>. *Id.; see also* original Complaint, Exhibit E.

5

administrative scheme, and also requires the exercise of discretion by the administrator on a number of matters. Plaintiff errs in arguing that *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987), suggests that the plan is not an ERISA plan because some of the benefits it provides are determined by a formula. *Fort Halifax* indicates almost as clearly as it could that severance plans like Deutsche Bank's Severance Plan are in fact ERISA plans.

In *Fort Halifax*, the Supreme Court held that a plan is an ERISA plan if it "by nature requires an <u>ongoing administrative program</u> to meet the employer's obligation." (Emphasis added.) The Court found that a state statute that required all employers to make one-time, lump-sum payments to their employees if they closed their plants was an ERISA plan because "it requires no affirmative scheme whatsoever to meet the employer's obligation"; "the theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits." 482 U.S. at 12.[3] In reaching this conclusion, the *Fort Halifax* court distinguished two cases it had summarily affirmed, which held that severance plans very similar to Deutsche Bank's were ERISA plans. *Id.* at 18 n.10. One of those, *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320, 322 (2d Cir. 1985), involved a severance program that provided that employees who were "involuntarily terminated" were "eligible" to receive severance pay based on <u>formulas</u> calculated by their age and length of service with the company. The Second Circuit recognized that the granting or denial

---

[3] Plaintiff's reliance on *Rodowicz v. Massachusetts Mutual Life Ins. Co.,* 192 F.3d 162 (1st Cir. 1999), is similarly misplaced. Unlike Deutsche Bank's Severance Plan, *Rodowicz* involved a retirement incentive program that was in effect for only two months and that provided retiring executives with a single, one-time bonus in an effort to reduce the work force by giving certain employees an incentive to leave. The Court deemed the program to "bear a striking resemblance to the individual severance packages" in *Belanger v. Wyman-Gordon Co.,* 71 F.3d 451, 452 (1st Cir. 1995), which involved one-time offers of a severance payment that the court held were "precisely the kind of one-time, lump-sum payment that the *Fort Halifax* Court clearly excluded from the pantheon of ERISA plans." 192 F.3d at 171.

6

of severance pay was "<u>automatic</u> upon termination." *Id.* at 323 (emphasis added). The Supreme Court made clear that this sort of a severance plan was indeed subject to ERISA. As the Supreme Court stated in *Fort Halifax*, "[t]here was no question in [*Gilbert*] whether the employer had a 'plan'; <u>there was a 'plan'</u> and the only issue was whether the type of benefits paid by that plan are among those covered by ERISA." 482 U.S. at 18 (emphasis added). In explaining why "there was a plan," the *Fort Halifax* court stated, in a footnote:

> The employer [in *Gilbert*] had made a <u>commitment to pay severance benefits to employees as each person left employment</u>. <u>This commitment created the need for an administrative scheme</u> to pay these benefits on an ongoing basis, and the company had distributed both a Policy Manual and Employees' Handbook that provided details on matters such as eligibility, benefit levels, and payment schedules.

482 U.S. at 18 n.10 (emphasis added).

Like the plan in *Gilbert*, Deutsche Bank's Severance Plan reflects a general and open-ended commitment to pay benefits to employees that by its nature creates the need for an ongoing administrative program. As is evident from the Deutsche Bank Severance Plan that plaintiff attached to his original Complaint as Exhibit D, and which plaintiff expressly alleged was an ERISA plan, Deutsche Bank's plan does not describe a one-time benefit that may never be triggered with respect to any employee, as the statute did in *Fort Halifax*, but instead provides severance pay for all eligible, involuntarily terminated employees over an indefinite period of time. Complaint ¶4. And like the plan in *Gilbert*, the ongoing obligations to pay severance that are reflected in Deutsche Bank's Severance Plan require an administrative scheme to comply with the obligations that Deutsche Bank assumed and to ensure financial coordination and control over the program. Discretion is

7

also required in the ongoing administration of the plan.[4]  Because the Severance Plan is an ERISA plan, plaintiff's common-law claims to four weeks of severance pay are preempted and should be dismissed.

### C. **Plaintiff's Refusal to Sign the Release on Which Severance Pay Was Conditioned Precludes His Claim for Four Weeks of Severance Pay.**

Plaintiff provides no basis to recover four weeks of severance pay on common-law claims where he failed to sign the release that was an express condition precedent to such payments.  He offers no authority, and there is none, for the assertion that his refusal to sign the release may be excused because Deutsche Bank "breached" the contract by presenting him with a release "requiring him to sign away many important rights." Opp'n at 14.  Deutsche Bank was entitled to, and did in fact, condition its <u>voluntary</u> assumption of an obligation to make severance payments to employees on being free from claims by those employees.  The obvious purpose of a release is to "sign away rights," regardless of their merit.  Moreover, as discussed above, plaintiff's claim to incentive compensation is meritless, and Deutsche Bank had every right to condition severance payments on being free from baseless litigation.

Finally, plaintiff makes the baffling assertion that Deutsche Bank "waived" its right to insist on the execution of the release as a condition to its payment of four weeks of severance pay because it offered to, and did in fact, pay plaintiff eight of the 12 weeks

---

[4]  Deutsche Bank's Severance Plan provides for the payment of benefits to all "eligible" employees who are "involuntarily terminated," and it sets standards for "eligibility" for benefits which the administrator must determine.  *See* Exhibit D to original Complaint.  Among other things, employees must be in "good standing"; must pay off their obligations to Deutsche Bank; must sign a release agreement in a "form" determined by Deutsche Bank, must not have been terminated for "misconduct" or "unsatisfactory performance," which the administrator has "sole discretion" to determine; and may not receive severance pay if they have been offered a "comparable" position with Deutsche Bank, which again the administrator has discretion to determine.  The administrator also has discretion to determine whether the employee will receive an additional "special" payment.  Finally, the plan sets up an appeals procedure for the denial of benefits.

of severance pay without requiring an executed release.  Opp'n at 15.  It is hornbook law that "[w]aiver is the intentional relinquishment of a known right." *Niagara Fire Ins. Co. v. Lowell Trucking Corp.,* 316 Mass. 652, 657, 56 N.E.2d 28, 31 (1944).  A party cannot be found to have waived a right unless it acted in a manner inconsistent with that right. *See, e.g., Malonis v. Loiselle*, No. 95-4429 (Mass. Super. Ct. Mar. 19, 2003) (2003 WL 1702598 at *7).

Deutsche Bank did nothing to indicate that it would not stand on its contractual right to insist on a release before it paid plaintiff the remaining four weeks of severance.  To the contrary, its termination letter to the plaintiff is wholly consistent with its insistence on this right, as it makes clear that, although Deutsche Bank offered to pay plaintiff eight of the 12 weeks without a release, it would not pay the remaining four weeks if it did not obtain an executed release.  Because plaintiff cannot recover four weeks of severance pay on any theory, Counts 3 and 4 should be dismissed.

DEUTSCHE BANK SECURITIES, INC.,
DEUTSCHE BANK AMERICAS HOLDING
CORPORATION, AND DEUTSCHE
BANK AMERICAS SEVERANCE PAY
PLAN,

By their attorneys,

/s/      Scott A. Roberts
Scott A. Roberts, BBO##550732
sroberts@swmlawyers.com
A. Lauren Carpenter, BBO#551258
lcarpenter@swmlawyers.com
SULLIVAN WEINSTEIN & McQUAY, P.C.
Two Park Plaza
Boston, MA 02116
Dated:  April 7, 2005                    617-348-4300

9