UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11027-RGS

CHRISTOPHER C. DAVIDSON

v.

DEUTSCHE BANK SECURITIES, INC.,
DEUTSCHE BANK AMERICAS
HOLDING CORPORATION, and
DEUTSCHE BANK AMERICAS
SEVERANCE PAY PLAN

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED AND RESTATED COMPLAINT

June 27, 2005

STEARNS, D.J.

Christopher Davidson, a terminated at-will employee of defendant Deutsche Bank Securities, Inc. (Bank), alleges that the Bank failed to pay him an earned incentive bonus as well as benefits that he is owed under the Bank's Severance Pay Plan (SPP). On December 15, 2004, the court heard the Bank's motion to dismiss the five counts of the original Complaint. The court allowed the motion as to Count I (Wage Act), Count IV (ERISA), and Count V (declaratory judgment) with prejudice, and dismissed Count II (breach of contract), and Count III (a claim framed under Gram v. Liberty Mutual Insurance Co., 384 Mass. 659 (1981)), without prejudice, giving Davidson the opportunity to amend the Complaint to allege facts supporting his theory of a reasonable expectation of receiving an incentive bonus. Davidson responded by filing the instant "First Amended and Restated Complaint" (Restated Complaint).

BACKGROUND

The Bank hired Davidson in early 2001. According to the Restated Complaint, Davidson's job involved the marketing of "proprietary research and large blocks of stock to various mutual funds and insurance companies located in and around Boston." Restated Complaint ¶ 4. Davidson was paid an annual base salary of $125,000. The Bank's February 7, 2001 employment offer (the Employment Letter) stated that Davidson would be eligible to "participate in the Deutsche Bank incentive pool" for a bonus "in an amount contingent upon the profitability of Deutsche Bank's operations, the performance of your division, and your individual contribution." For the year ending December 31, 2001, the Employment Letter guaranteed Davidson an incentive bonus of no less than $875,000. Davidson also received discretionary awards in 2002 and 2003 that exceeded his base salary. On March 16, 2004, Davidson was terminated by the Bank.

On May 11, 2004, Davidson sued the Bank in the Massachusetts Superior Court. The Bank removed the case to the federal district court on diversity grounds. At a December 15, 2004 hearing on the Bank's motion to dismiss, the court allowed the motion but gave Davidson twenty-one days to amend the Complaint "to add allegations of custom and usage at Deutsche Bank and in the industry and facts relating to the theory of ascertainable future wages arising from past services under Gram v. Liberty Mutual Ins. Co., 384 Mass. 659 (1981), [sufficient] to support a viable quasi-contract claim." On January 5, 2005, Davidson filed the Restated Complaint.[1]

---

[1] The Restated Complaint is pled in five counts as follows: Count I - Breach of Contract; Count II - Quantum Meruit; Count III - Breach of Implied-in-Fact Contract; Count IV - Breach of Implied Covenant of Good Faith and Fair Dealing; and Count V - Entitlement

## DISCUSSION

"We must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." Vartanian v. Monsanto Company, 14 F.3d 697, 700 (1st Cir. 1994); Knight v. Mills, 836 F.2d 659, 664 (1st Cir. 1987); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, the court may look to matters of public record. Boateng v. Interamerican Univ., 210 F.3d 56, 60 (1st Cir. 2000). The court may also look to documents the authenticity of which are not disputed by the parties, including documents central to Davidson's claims, and documents referenced in the Restated Complaint.[2] Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

The Restated Complaint does no better job than the original in asserting facts supportive of a theory of an entitlement on Davidson's part to an earned bonus and ascertainable future compensation.[3] Davidson simply alleges that "under the terms of the

---

to Reasonably Anticipated Future Compensation in Circumstances Involving Discharge Without Cause.

[2]The Employment Letter is attached to the Restated Complaint.

[3]Davidson includes in the Restated Complaint claims for damages under the Bank's SPP. This claim was previously dismissed with prejudice. As the court pointed out, the Bank offered Davidson a termination package under the SPP that included payment of 12 weeks of Davidson's base salary upon the execution of a Separation Agreement. Section 2 of the SPP states that a Bank employee is entitled to benefits if: "(i) the employee remains in good standing through the date of termination; (ii) the employee settles his expenses, employer loans and returns employer property; and (iii) the employee executes a Release Agreement in the form and within the time frame required by the employer." Davidson refused to sign the Separation Agreement because it "failed to provide for the full payment of amounts owed him." Restated Complaint ¶ 12. Having failed to comply with an essential term of the SPP, Davidson cannot now complain of the Bank's reciprocal refusal to perform.

agreement established . . . under the Employment Letter," the Bank "is obligated to pay Davidson his [2004] incentive compensation upon fulfillment of certain conditions." Restated Complaint ¶ 16. In the Employment Letter, the Bank stated that incentive bonuses were contingent on the Bank's overall profitability, the performance of Davidson's division, and Davidson's individual contribution. Davidson alleges that for the first quarter of 2004, the Bank reported a net income of approximately $1.159 billion as compared to a $270 million loss during the same quarter in 2003. Davidson's division (sales and trading) achieved sales of $636 million as compared with $622 million during the same period in 2003. Davidson also asserts that during this period he "performed his duties in a manner equal or better than he had during his prior years of employment." Restated Complaint ¶ 8. From these alleged facts, Davidson draws the conclusion that he is owed incentive compensation for the first quarter of 2004 in some proportion to the Bank's overall earnings.

In Gram v. Liberty Mutual Ins. Co., supra, the Supreme Judicial Court held that the implied covenant of good faith and fair dealing was breached "when, despite the employer's good faith, the discharge of the terminable at-will employee nevertheless results in the employee's loss of compensation already earned." King v. Driscoll, 424 Mass. 1, 6 (1996). Finding such a breach in Gram, the Court remanded the case for a determination of the employee's "reasonably ascertainable future compensation based on his past services" (in Gram the calculation involved an estimate of the policy renewal commissions that the plaintiff-salesman could have reasonably expected to receive). Gram, 384 Mass. at 671. The Court, however, also held that liability attaches only when

there is "recognition of the agreed worth of such an employee's past services." Id. at 672. As there is no means in this case of evaluating with any degree of certainty the future worth of Davidson's past services to the Bank, much less any agreed means, there is no viable claim under Gram.[4]

Davidson's contractual argument is framed on the implied covenant of "good faith and fair dealing."[5] Davidson argues that the covenant obligates the Bank to pay him "some" compensation over and above his base salary for the blocks of stock that he sold to mutual fund and insurance companies during the first quarter of 2004. "Every contract implies good faith and fair dealing between the parties to it." Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 362 n.9 (1990), quoting Kerrigan v. Boston, 361 Mass. 24, 33 (1972). The covenant reflects an implied condition that inheres in every contract "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, 411 Mass. 451, 471-472 (1991) quoting Uproar Co. V. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir. 1936). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and

---

[4] While the Employment Letter guaranteed Davidson an incentive bonus, it did so only for the year ending in 2001.

[5] The covenant, of course, presumes the existence of a contract. Davidson's Employment Letter specifically stated that "[t]his offer is not intended to be, and should not be construed as creating a contract guaranteeing employment for any specific duration . . . . It is understood that [the Bank] is offering you an employment 'at will' relationship, i.e., either you or [the Bank] may separate you employment at any time for any reason . . . ." For the sake of completeness, the court will address Davidson's argument.

agreed expectations of the parties in their performance." Uno Restaurants Inc., v. Boston Kenmore Realty Corporation, 441 Mass. 376, 385 (2004). There are no credible allegations that the Bank acted in bad faith in terminating Davidson in order to deprive him of a benefit to which he had a contractual entitlement.[6] Cf. Hartford Acc. & Indemnity Co. v. Millis Roofing & Sheet Metal, Inc., 11 Mass. App. Ct. 998, 999-1000 (1981).

At the initial motion hearing, Davidson argued that it was the Bank's practice, as well as the custom in the industry, to pay the "lion's share" of a salesman's compensation in the form of an incentive bonus. The court offered Davidson an opportunity to plead particulars setting out such a binding custom or practice. The Restated Complaint offers no more than the allegation that Davidson conferred

> a measurable benefit on Deutsche by providing valuable services with the reasonable expectation of being compensated. This expectation was due to Davidson's employment letter, the past practice of Deutsche Bank as well as the standard in the industry.

Restated Complaint ¶ 20. No reasonable finder of fact could hold the Bank to a custom or practice based on a plaintiff's subjective expectations of what the industry "standard" required.

---

[6]Davidson's quantum meruit claim fails for the same reason. "Quantum meruit is a theory of *recovery*, not a cause of action. It is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself. Recovery under this theory is derived from the principles of equity and fairness when there is substantial performance but not full completion of the contract." J. A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986).

6

ORDER

For the foregoing reason, Deutsche Bank's motion to dismiss the remaining counts is <u>ALLOWED</u> with prejudice. The Clerk will enter judgment for the Bank.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE